No. 23,438.

J. H. HASTY, *Appellee,* v. GEORGE COCHRAN, *Appellant.*

SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Land—Commissions.* The instructions given were free from error.

2. The verdict was sustained by a sufficient portion of the conflicting evidence.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 8, 1922. Affirmed.

*Floyd E. Harper,* and *James J. Olson,* both of Leavenworth, for the appellant.

*William Dill,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered judgment for $349.37 commission for procuring a purchaser for the defendant's farm. The bill of particulars alleged the sale to "one Mr. Ode." In his testimony, the plaintiff said that he received a letter dated February 14, postmarked February 15, 1919, in which the defendant stated he wanted to sell his farm, consisting of 98 acres and 92 acres, for $17,000 net and would divide, but might do a little better to make the sale on the whole; that after receiving this letter he had a talk with the defendant who said he would take $16,000 if he could get a buyer for it, and the next morning he talked with Henry Ode, who said he would go out and look at the farm, as he was interested; plaintiff did not know of the Odes going out to look at it until along in June; that Mr. Ode did go down in June, and he saw him on his way and was invited to go along, but he did not go; that about the 15th of July, Mr. Ode called for the plaintiff over the telephone and directed the person answering to tell the plaintiff he would be down after a while to see him. After a while he came down with some other men and they asked the plaintiff if he had sold the land yet, and he said "No," but that Mr. Ode had better buy the place, and he said he believed he would, and went on down and bought it, and the plaintiff thought he paid $16,300 for it. Henry Ode told him at different times that he was going down to look at the farm before he did go; that he saw him the next Monday morning after his trip and he told him he bought it.

It appears that the deed to the land was taken in the name of Fred Ode, Henry Ode's father, and Henry testified that he had no conversation about the land until July, and in that conversation he told the plaintiff he thought Cochran's place was sold as he had a deal on for it. He received a letter from the owner on February 20, listing the land with him and said this was in answer to a letter he had written the defendant asking him to list his farm with him for sale; that he had sold some farms; that he gave the owner a check to which his father's name was signed per H. A. Ode; that he never took his father down to see the land; that his father had a farm at Potter which he sold for $13,000, and at his son's suggestion bought the one in question.

"Mr. Cochran had written me a letter he would take $16,250.00 for the place. My father was not in the market to buy any land until probably the first of July, when he got this offier for his farm at Potter, which he decided to sell as I advised him to and buy this one. I have never bought and sold any land myself."

The defendant testified he wrote to the plaintiff and H. A. Ode and others, listing his land for sale at different prices, and that Henry Ode told him during the process of the negotiations that Fred Ode was buying the farm; that Henry Ode had been down two or three times before the July transaction to look over the place.

"There was a contract made on this 12th day of July. The contract was drawn up at my house by Henry Ode. Henry Ode gave me a check, signed his father's name per H. A. Ode. . . . He signed it at my house that day."

The court charged the jury that if they believed from the preponderance of the evidence that the plaintiff first called the attention of Henry Ode to the farm being for sale, the plaintiff would be entitled to recover although the property was taken in the name of Ode's father, but if they believed Henry Ode's attention was first called to the farm by the defendant's letter, and in pursuance of such letter the sale was made through Henry Ode to Fred Ode, then the plaintiff would not be entitled to recover.

The defendant demurred to the plaintiff's evidence and complains because the demurrer was overruled and because the court instructed that if the jury believed from the preponderance of the evidence that the plaintiff brought about the sale of the property he was entitled to a commission although the property was taken in the name of Henry Ode's father, and because the court did not instruct that although the plaintiff, Hasty, called the attention of Henry Ode to

the farm being for sale, and the latter entered into a contract with the defendant to sell the farm for him, Hasty could not recover. Counsel say:

"There is no evidence in this case whatever that H. A. Ode ever bought this farm. . . . The undisputed testimony in this case is that Fred Ode bought the farm, the farm was deeded to Fred Ode and that Fred Ode paid for the farm from the proceeds which he received from the sale of a farm he had owned near Potter, Kansas."

Whether Henry Ode, who appears to have been a banker, and did, or undertook to do some real-estate business, really bought this farm for himself or had his father *bona fide* buy it through him, is a question about which fair-minded men might disagree on reading the record before us. Twelve jurors might well disagree after hearing the testimony of all witnesses given in this case.

We find no error in the instructions given, and as the defendant offered no other instructions, he cannot complain, for the charge seems to have fairly covered the issues between the parties. The mere paper fact of the deed running to Fred Ode instead of his son is not conclusive by any means. All the claimed dealings and conversations between the parties, and others who overheard some of the conversations, together with the facts shown, were before the jury, and from all of these they had to conclude for one party or the other. The conclusion reached finds sufficient support in the record, so that it must be permitted to stand.

The judgment is therefore affirmed.